# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELIZABETH ENGLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ILLINOIS DEPARTMENT OF FINANCIAL | ) Case No. 2019 cv 00402 |
| AND PROFESSIONAL REGULATION and | ) |
| JESSICA BAER, in her official capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Elizabeth Engle ("Engle"), by and through her undersigned counsel and for her Complaint for Preliminary and Permanent Injunctive Relief, complains of the Defendants, Jessica Baer, in her official capacity as Acting Director of the Illinois Department of Financial and Professional Regulation ("IDFPR") Division of Real Estate, and the IDFPR, and in support thereof states as follows:

INTRODUCTION

1. The IDFPR granted Engle an Illinois appraiser's license on December 8, 2014, pursuant to an application for that license which she filed with it on September 11, 2014. ("September 2014 Application"). Beginning on January 24, 2019, Defendant IDFPR is scheduled to hold a hearing on whether it should revoke Engle's Illinois real estate appraiser's license on the grounds that she allegedly made false statements in the September 2014 Application about the requisite amount of hours she spent performing appraisals as a trainee to obtain her appraiser's license. *See* **Exhibit 1**, IDFPR Schedule of Formal Hearings for January

2019. The basis for the IDFPR's allegation in this regard is that the training hours listed on the September 2014 Application are materially inconsistent with amounts of training hours she listed for performing the same appraisals in her October 29, 2013, Application ("October 2013 Application")—an application IDFPR had allowed her to withdraw without any discipline after bringing charges against her for filing a fraudulent application on March 20, 2014, pursuant to a settlement agreement ("March 2014 Settlement Agreement") in part because she had placed those training hour amounts on the September 2013 Application in reliance on directives she received from Weaver in his capacity as the REA Coordinator on how to record those hours in light of an apparent ambiguity in the IDFPR rules concerning the proper method of recordation.

2. Despite these facts, IDFPR intends to proceed with the revocation hearing against Engle, and as a result, Engle now faces the loss of an important property right – her appraiser's license – on the basis of a decision by a tribunal that is neither free of bias and/or the appearance of bias in violation of her constitutional due process right to have a fair and impartial tribunal adjudicate her right to her appraiser's license.

3. Engle brings this lawsuit to obtain injunctive relief from this Court preventing IDFPR from holding Engle's **January 24, 2019**, revocation hearing because the basis for IDFPR's charges is the fact that the amount of training hours she claimed in her September 2014 Application for certain appraisals was more than what she claimed in her October 2013 Application—when they had allowed her to withdraw without discipline as a term of the March 2014 Settlement Agreement. For these same reasons, Engle also brings this lawsuit in order to obtain injunctive relief from this Court preventing Defendant Baer, the Acting Director of IDFPR's Division of Real Estate, as the final authority on whether Engle's license shall be revoked, from taking any action to revoke said license as a result of, or otherwise in connection

with, any Disciplinary Board recommendation in violation of the terms of the settlement agreement Engle entered into with the Disciplinary Board.

4. For reasons set forth below, this Court should grant Engle's requested relief.

## JURISDICTION

5. This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

## VENUE

6. Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §1391(b) because Defendants reside in this district and a substantial portion of the claims asserted herein occurred in this district.

## PARTIES

7. Plaintiff Engle is an individual residing in Lake Forest, Illinois.

8. Defendant Baer is the Acting Director of the IDFPR Division of Real Estate. Baer is being sued in her official capacity. Upon information and belief, Defendant Baer assumed the role of Acting Director of the IDFPR Division of Real Estate on or about January 15, 2019, shortly after the inauguration of Governor J.B. Pritzker. She succeeds former IDFPR Division of Real Estate Director Kreg Allison ("Allison").

9. Defendant IDFPR is a state agency of the State of Illinois and is located, among other places, in Chicago, Illinois.

## EXHAUSTION OF REMEDIES

10. There is typically a requirement that administrative remedies be exhausted before parties to an administrative action may avail themselves of a court of law. However, exhaustion is not required when to do so would be futile, or where the action which is the subject of the lawsuit is illegal.

11. Engle's motion to dismiss have been denied, despite detailed, researched briefs which showed the hearing officer that IDFPR is violating Engle's due process rights. *See* **Exhibit 2,** Engle's Motion to Dismiss, and *See* **Exhibit 3**, and the Order denying said motion. The aforementioned motion described how the IDFPR used their power prosecute, not to enforce written law (as their complaint lacked prima facie evidence of fraud), but to enforce unwritten rules, and for punishing Engle for exercising her due process rights.

12. The judge of this court need not be educated in the area of real estate appraisal in order to know when due process is being suppressed without any factual allegation or basis sufficient to satisfy the state's interest.

13. This lawsuit seeks, in part, to enjoin IDFPR from going forward with its administrative hearing. To have exhausted such remedies would have been extremely expensive and futile, as the entire hearing process is tainted and unconstitutional.

14. A review of the underlying charges shows that there has been no evidence what so ever of the charges levied against Engle by the IDFPR, and it is clear that the IDFPR is attempted to enforce and prosecute an illegal unwritten rule.

## BACKGROUND FACTS

10. Defendant IDFPR regulates the practice of real estate appraisals in Illinois, pursuant to the Real Estate Appraiser Licensing Act of 2002, 225 ILCS 458/1-1, *et seq.* (the "Act") and pursuant to the rules and regulations it promulgates in order to implement the Act. IDFPR grants licenses to practice as a real estate appraiser after an applicant has, among other things, passed a licensing exam, completed 2,500 Training Hours, and has obtained the necessary documentation in the form of a written application and attached certifications.

11. Individuals training to become a licensed real estate appraiser in Illinois must complete appraisals as trainees under the supervision of an authorize licensed appraiser and log

their hours (their "Training Hours") under the supervision of a licensed appraiser. IDFPR requires applicants to disclose Training Hours on IDPFR forms ("Experience Logs"), which are then signed by the supervising appraiser and submitted along with the applicant's written application materials. Applicants complete Experience Logs in conjunction with another IDFPR document known as the "Matrix," which contains predetermined recommended amounts of hours Training Hours an applicant may claim for a given type of appraisal. IDFPR's Disciplinary Board then reviews applications and decides whether to grant or deny real estate appraiser licenses based on the information contained in those applications and supporting materials, including but not limited to Experience Logs.

12. Defendant Weaver is a member of the Board and participates in decisions to grant or deny appraiser licenses. Defendant Baer is IDFPR's Division of Real Estate Acting Director and is the final authority on revoking real estate appraiser licenses. Upon information and belief, Defendant Baer relies, and sometimes adopts, the recommendations of the Board in deciding whether to revoke a real estate appraiser's license.

13. Engle, was, prior to the issuance of her Illinois real estate appraiser's license (License No. 556.004991, hereinafter the "License"), an applicant to become an Illinois real estate appraiser. She worked as an appraiser in training at Key Appraisals of Park Ridge, Illinois. *See* **Exhibit 4**, Engle Declaration, ¶ 2. In November of 2011, while she was in the process of completing her Training Hours, one of Engle's supervisors, Hal London ("London"), died of cancer. *Id*. ¶ 3.

14. Two years later, in 2013, when Engle and her colleague, Glenn Brown ("Brown") were ready to submit their licensing applications to IDFPR, they could not produce completed Experience Logs for all of their Training Hours because London did not sign all of the necessary

paperwork before he died. *Id*. at ¶ 4. Additionally, Engle and Brown were unclear on how to report Training Hours that exceeded the number of hours IDFPR listed in the Matrix. Ex. 4 at ¶ 4. This is because at that time, IDFPR's forms were ambiguous as to how many Training Hours an applicant should record: while some IDFPR forms suggested that the applicant should record the actual number of training hours spent on a given appraisal, the IDFPR Matrix suggested that the applicant should only record and take credit for the number of Training Hours listed therein. *See* Ex. 4 at ¶ 4.

### ***Engle Obtains Guidance from IDFPR and Submits Her 2013 Application***

14. Brown, on behalf of both himself and Engle, contacted IDFPR for guidance in August 2013. *Id*. ¶ 5. At that time, Brown had conversations with IDFPR's REA Coordinator, Defendant Weaver, concerning the application process as well as Defendant Weaver's subordinate, Mary Bates ("Bates"), who was, at the time, the Board's Liaison whose official duties included corresponding with appraisal license applicants, like Brown and Engle, who had questions about licensure requirements. *Id*. Specifically, Brown asked Weaver and Bates for direction on how to complete Experience Logs given that London was no longer available to sign them. *Id*. Weaver and Bates directed Brown to transpose London's signature on to the Experience Logs, note that he was doing so in a cover letter, and include with his application proof of London's death. *Id*. Brown then sought direction on whether he should only record the Matrix hours or the actual Training Hours spent on a given appraisal when the actual Training Hours exceeded the Matrix hours. *Id*. Weaver, and/or Bates at Weaver's direction, provided the Application Guidance regarding using Matrix hours. *Id*.

15. Brown immediately communicated Weaver's directives to Engle, who was present in the room with Brown while he was speaking with Weaver and/or Bates. *Id*. Engle, in turn, completed her application materials in accordance with Weaver's directives. *Id*. ¶ 5, 7. In

accordance with and in reliance upon Weaver's directives, Engle transposed London's signature to her Experience Log; Engle also submitted a cover letter to the Disciplinary Board stating that she had transposed London's signature on to her Experience Log. *Id*. ¶ 7. Also in accordance with and in reliance upon Weaver's directives, Engle only recorded her Training Hours up to the amounts IDFPR listed in the Matrix, and she did not record any of her actual Training Hours that exceeded the Matrix amounts. *Id*. Engle executed her application on September 4, 2013, and submitted it to the Board for consideration-the October 2013 Application *See* **Exhibit 5**, Selected Portions of Engle's October 2013 Application.

*Weaver Charges Engle with Fraud in Her 2013 Application*

16. On or about October 29, 2013, Weaver initiated fraud charges against Engle for "submitting a false log." A copy of Weaver's October 29, 2013, email initiating those charges is attached hereto and incorporated as **Exhibit 6.** On or about November 18, 2013, Weaver issued Engle a Notice of Intent to Deny her application to become a licensed Illinois real estate appraiser, a copy of which is attached hereto and incorporated as **Exhibit 7**. In these documents, IDFPR charged that Engle had "submitted a falsified experience log," in violation of Section 15-10(a)(1) of the Act, which prohibits, among other things, procuring or attempting to procure a license by knowingly making a false statement or submitting false information, or engaging in any form of fraud or misrepresentation, based on her application of London's signature to her Experience Log. See 225 ILCS 458/15-10(a)(1). IDFPR alleged that Engle committed fraud even though Engle clearly and unambiguously disclosed in her 2013 Application that London had died and she had transposed his signature at Weaver's direction. *Id*.

17. On or about March 20, 2014, Engle and her prior counsel, Andrew Poynton, attended a preliminary hearing at IDFPR's offices and entered into the March 2014 Settlement

Agreement. Also present was IDFPR prosecutor Patrick Bernard ("Bernard") and two other Disciplinary Board members. *See* Ex. 4¶ 9. After the hearing, Engle's counsel and Bernard reached an agreement whereby the Board would withdraw Weaver's charges and allow Engle to re-apply on two conditions. Ex. 4 at ¶ 10. First, Engle would have to make up all of the hours she worked under London. Ex. 4 at ¶ 10. Second, Engle's subsequent application must reflect the actual number of Training Hours worked and not just the Matrix amounts. Ex. 4 at ¶ 10.

18. On April 29, 2014, Bernard issued Engle a letter stating as follows:

> As discussed following the [March 20, 2014] informal conference held with the Department, withdrawal of the current application will close the case without disciplinary action being taken. Any future submission of experience log hours will be accepted, provided that they are found in a valid[,] properly documented experience log as required by the Real Estate Appraisal Act of 2002. These requirements include, but are not limited to, a valid supervisor signature and accurate accounting of the hours spent performing the appraisal.

*See* **Exhibit 8**, Bernard Letter of April 29, 2014.

19. In response, on May 6, 2014, Engle withdrew her 2013 Application on the following terms:

> In conjunction with your letter of April 29,[]2014[,] and the [IDFPR's] agreement that the withdrawal of my currently pending application for licensure as a Certified Residential Real Estate Appraiser will close the above case without disciplinary action being taken or any prejudice against any future application for licensure, please allow this letter to confirm my immediate withdrawal of the above reference[d] application for licensure as a Certified Residential Real Estate Appraiser. Please be advised that this letter shall not withdraw, cause the resignation of, or have any other effect upon my current status as an Associate Real Estate Trainee Appraiser and shall confirm that said status shall continue notwithstanding the withdrawal of my application for the credential of Certified Residential Real Estate Appraiser.

*See* **Exhibit 9**, Engle Letter of May 6, 2014.

20. On June 13, 2014, an Order to Remove From the Call was entered in IDFPR v Elizabeth Engle, Case Number: 2013-09550, was entered, wherein the reasoning for granting said order and in effect ending the prosecution of Engle, states, "Resp [Respondent] app

[application] was withdrawn." *See* **Exhibit 10**, Order to Remove From the Call. Further on said order it reads next to "Dept. Attorney" it reads, "Bernard." Thus, after Engle issued her letter conditioning that her withdrawal be without prejudice to any subsequent application, the aforementioned order evidences that Bernard accepted Engle's offer by ending any future prosecution with the execution of said order.

### *Engle Complies with IDFPR's terms, re-applies, and is again charged with fraud.*

21. Between April and September of 2014, Engle redid all of the Training Hours she had performed under London that he did not verify by signature before he died. Ex. 4¶ 13. Engle documented all of her Training Hours (not just Matrix hours) in complete Experience Logs, signed by her supervisor, that reflected the actual number of Training Hours spent on each appraisal, not just the Matrix amounts. As a result, for certain appraisals, Engle's September 2014 Application reflected that she had performed more Training Hours than what she had recorded on her 2013 Application. *Id*. ¶ 13. On September 11, 2014, Engle submitted her September 2014 Application for a real estate appraiser license. Approximately three months later, on or about December 8, 2014, the Disciplinary Board granted Engle an appraiser license.

22. In 2015, however, the Disciplinary Board again voted to charge Engle with fraud. On information and belief, the Disciplinary Board reached this decision after a presentation by Weaver wherein he alleged that the number of Training Hours Engle claimed in her September 2014 Application exceeded the Training Hours she claimed for the same appraisals in her October 2013 Application. The Disciplinary Board took this action even though it knew, or reasonably should have known, that the amount of Training Hours Engle claimed for these appraisals increased because she was complying with March 2014 Settlement Agreement, as

documented in Bernard's letter to her, to record the actual Training Hours, not the Matrix amounts as Weaver had originally advised in 2013.

23. On or about April 1, 2015, IDFPR Division Chief of Real Estate Prosecutions Christopher Hage ("Hage") telephoned Engle and informed her that her license had been issued in error, and that she should return her license immediately or he would "press charges." When Engle asked Hage for an explanation, he stated "I do not have to tell you why." In a letter dated April 2, 2015, Hage informed Engle that she had ten days to return her license, and that if she did not meet this deadline, IDFPR would begin administrative action against said license. A copy of that letter is attached hereto and incorporated as **Exhibit 11**.

24. Just above Engle's signature on her application (and all application forms of the like), in Part 12 of the Certifying Statement, it reads in pertinent part:

> I authorize the Illinois Department of Financial and Professional Regulation to interview the employees of companies, institutions, or organizations listed for my education, experience, or testing experience and to inspect my office appraisal files to verify information given on my application….
>
> [i]f an appraisal license is issued to me in error, I agree to return the license upon request after being given **appropriate due process** (emphasis added).

*See* Page 5 of **Exhibit 5**, the signature page of Engle's Application.

25. Title 68, Section 1455.290 of the Illinois Rules of the Administrative Code reads:

> *[p]ursuant to Section 15-10(a)(17) of the Act, all licensees are required to fully cooperate with any audit, investigation, interrogatory, examination or request for information regarding any aspect of the licensee's appraisal practice or application for licensure. Full cooperation includes, but is not necessarily limited to providing to the Division within 30 days after its request:*
>
> *a)    A complete copy of an appraisal or appraisal review assignment    as it was transmitted to the client, including file memoranda, work files, supporting and/or verification*

> *documentation that are required to be maintained by the Act and this Part;*
>
> *b) Continuing education certificates or experience/work log that are required to be maintained by the Act or this Part; or*
>
> *c) A complete answer to any written interrogatory or request for clarification submitted to a licensee or applicant.*

26. Engle was not asked to provide clarification regarding her application, nor was she even informed that the result of her audit was found to show that her hours were felt not justified, nor was she requested to produce further examples of her work to determine if she had the requisite hours necessary. Ex. 4 at ¶ 18.

27. Engle is unaware of any efforts at all by Weaver and/or the IDFPR to use any of their vast investigatory powers given to them by the aforementioned Title 68, Section 1455.290 of the Illinois Rules of the Administrative Code, in order to do a fair and thorough investigation, other than a routine audit of three properties. Ex. 4 at ¶ 19.

28. Thus, Hage's letter to Engle is evidence that he was asking Engle to surrender her license without any due process, which runs in contradiction to the language she agreed to upon signing her application, which promised for due process before any return of license due to issuing it in error.

29. On June 29, 2015, the Disciplinary Board filed a complaint against Engle containing 127 counts. A copy of the Disciplinary Board's complaint is attached hereto and incorporated as **Exhibit 12**. In Count 1, the Disciplinary Board alleged that Engle failed to sufficiently explain why the number of Training Hours she claimed in her 2014 Application increased by 779 hours, in violation of Section 1510(a)(2) of the Licensing Act. *Id*. In Counts 2-127, the Disciplinary Board separately alleged that Engle made 126 separate false statements in

her 2014 Application solely because, for a given appraisal, the amount of Training Hours she claimed in her 2014 Application differed from the (Matrix) amount of Training Hours she claimed in her 2013 Application. *Id*.

### *Engle Litigates the Board's New Fraud Charges; Weaver Participates on IDFPR's Behalf*

23. On September 8, 2015, Engle moved to dismiss the Disciplinary Board's charges on the grounds that the amount of Training Hours she claimed in the September 2014 Application was more than the October 2013 Application because she was reporting her actual Training Hours, in accordance the terms of the March 2014 Settlement Agreement. *See* **Exhibit 2**. While that motion was pending, Engle's attorney of record, Al Augustine, suddenly dissolved his law firm and retired due to the unexpected death of his partner. As a result, Engle was unable to secure new counsel and answer IDFPR's administrative complaint in the time allotted.

24. On December 1, 2015, the Administrative Law Judge ("ALJ") assigned to Engle's case entered an Order finding her in default for failing to timely answer or otherwise plead in response to IDFPR's complaint, and referred her case to the full Disciplinary Board for final consideration of the charges against her. *See* **Exhibit 13**, Order of December 1, 2015. Engle filed an Answer to the Complaint on January 22, 2016, *see* **Exhibit 14**, and simultaneously moved to vacate the December 1, 2015, default order. *See* **Exhibit 15**. The Disciplinary Board never ruled on Engle's motion to vacate. On or about January 13, 2016, the Disciplinary Board issued findings of fact, conclusions of law, and a recommendation to IDFPR's then Director of the Division of Real Estate, Kreg Allison ("Allison"), that Engle's license be revoked. *See* **Exhibit 16**, January 13, 2016, Report of IDFPR Disciplinary Board. On information and belief, Weaver participated in the Disciplinary Board's decision to recommend that Engle's license be revoked.

25. On February 2, 2016, Engle moved to deny the Disciplinary Board's recommendation to Allison, and requested that he remand her case for further consideration on the merits. On March 8, 2016, Allison issued a final order that (1) denied Engle's motion to deny the Disciplinary Board's recommendations and for remand, and (2) revoked her license, on account of the discrepancies in Training Hours between her October 2013 Application and her September 2014 Application. *See* **Exhibit 17**, Order of April 19, 2016; *see also* **Exhibit 18**, IDFPR Case Transmittal Form.

26. Engle subsequently filed a complaint in the Circuit Court of Cook County seeking administrative review, arguing that her due process rights were violated when her license was revoked based on a default order rather than a hearing on the merits. The Circuit Court of Cook County granted IDFPR's motion to dismiss Engle's complaint for administrative review. However, on March 23, 2018, the First District Appellate Court reversed both the Circuit Court's dismissal and vacated IDFPR's decision to revoke Engle's license. Engle's case was remanded back to IDFPR for further proceedings. *See* **Exhibit 19**, *Engle v. IDFPR*, 2018 IL App. (1st) 162602.

27. Subsequently, Engle reviewed a February 24, 2017, email with her Boss, Bruce Bernacchi, sent from a real estate appraiser trainee, Ray Anderson to Bernacchi. The aforementioned email was evidence of the unwritten rule that the Department does not want trainees asking for hours over the Matrix maximum. Said email was from Brian Weaver to a Anderson, in which Mr. Weaver writes, in pertinent part, "...If you're asking for 12 hours on what the matrix says should be no more than 10 hours…I wouldn't recommend submitting the form for excess hours. However, if you were appraising a 12,000 Sq.Ft. house on 7 acres, it might take 25 hours or more. Then…it might be worth it." *See* **Exhibit 20.**

28. The Illinois Administrative Procedures Act, regulates what kind of rules Department and the Division can enact and enforce. Further, 5 ILCS 100/5-10, is entitled, "Adoption and availability of rules." 5 ILCS 100/5-109(c) reads, "[n]o agency rule is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for the public inspection and filed with the Secretary of State as required by this Act. No Agency, however, shall assert the invalidity of a rule that shad been adopted under this Act when an opposing party has relied upon the rule."

29. Thus, Weavers unwritten rule that one should report hours but never take credit for more the maximum hours listed in the Matrix, but for, exceptional circumstances, is an unwritten rule. Pursuant to 5 ILCS 100/5-109(c) unwritten rules that are promulgate, and invoked are invalid and illegal.

30. The Disciplinary Board's June 2015 complaint, containing 127 counts of fraud, is currently pending against Engle.

## COUNT I
### (Violation of 42 U.S.C. § 1983)

31. For her Paragraph 31, Engle incorporates and re-alleges Paragraphs 1-30 as if set forth fully herein.

32. Defendant IDFPR seeks to conduct proceedings to revoke Engle's Illinois real estate appraiser's license based on the allegation that she overstated Training Hours in her 2014 Application for appraisals also listed on her 2013 Application.

33. At a March 20, 2014, hearing, IDFPR informed Engle that it appeared that her 2013 Application was fraudulent because she claimed she worked Training Hours in the Matrix amounts for each appraisal. *See* Ex. 4, Engle Dec., ¶ 9. As a condition of dismissing the pending charges against her, IDFPR told Engle that she must report her actual Training Hours on any

subsequent application for licensure. Ex. 8, Bernard Letter. In response to Bernard's offer of settlement, Engle withdrew her October 2013 Application, but expressly on the condition that it be without prejudice to any subsequent application she filed. *See* Ex. 9. Again, on June 13, 2014, an Order to Remove From the Call was entered in IDFPR v Elizabeth Engle, Case Number: 2013-09550, was entered, wherein the reasoning for granting said order and in effect ending the prosecution of Engle, states, "Resp [Respondent] app [application] was withdrawn." *See* **Exhibit 10**. Again, on said order it reads next to "Dept. [Department] Attorney" it reads, "Bernard." Thus, after Engle issued her letter conditioning that her withdrawal be without prejudice to any subsequent application, the aforementioned order is evidence that Bernard accepted Engle's counter offer by ending any future prosecution with the execution of said order.

34. In her 2014 Application, Engle recorded her actual Training Hours, which were greater than the Matrix hours she recorded in her 2013 Application, because she was required to do so as part of her March 20, 2014 settlement agreement with IDFPR. *See* Ex. 4, Engle Dec. ¶ 13. The amount of Training Hours Engle listed in her 2014 Application increased for certain appraisals because she reported the actual Training Hours instead of just the Matrix hours, as she had been instructed to do by Weaver in August of 2013.

35. In June of 2015, IDFPR charged Engle with fraudulently overstating her Training Hours. The basis for IDFPR's fraud charges was the increase in Training Hours between Engle's 2013 Application and her 2014 Application.

36. Accordingly, at the upcoming hearing to determine whether Engle's real estate appraiser's license should be revoked, virtually the only issue to be determined will be whether the amount of Training Hours that Engle claimed for certain appraisals increased from her 2013 Application to her 2014 Application.

37. IDFPR thus seeks to deprive Engle of her appraiser's license—a property right that is protected by the Constitution—without affording her due process of law in the form of a fair and impartial hearing.

38. Plaintiff Engle complied with the terms of her March 20, 2014, Settlement Agreement with IDFPR, and relied on contemporaneous advice and statements made by IDFPR on March 20, 2014, by, among others, Prosecutor Patrick Bernard, that if she reapplied for licensure and listed her actual Training Hours, that there would be no prejudice to her or her application.

39. Engle will be irreparably harmed if IDFPR moves forward with its proceedings to revoke Engle's license, and/or if Defendant Baer ultimately decides to revoke Engle's license, based on the charges currently pending against her, which arise from her compliance with the terms of the parties' March 20, 2014, Settlement Agreement—a harm that cannot be adequately compensated by monetary damages.

40. Defendants will suffer little, if any, harm from a narrowly tailored injunction, because such an injunction would only require them to follow the law. No harm can be suffered by Defendants when balanced against the heavy burden imposed upon Engle without an injunction.

41. Without an injunction, the harm to the public will be substantial because Engle, as the holder of an Illinois real estate appraiser's license, was subjected to violations of her constitutional rights which can violate the rights of other license holders.

WHEREFORE the Plaintiff, Elizabeth Engle, prays that this Honorable Court: Enter an Order enjoining Defendants Weaver, Baer, and the Illinois Department of Financial and Professional Regulation from initiating or otherwise participating in any further disciplinary actions relating to Plaintiff Elizabeth Engle's license in violation of her constitutional rights, and

enjoining Defendant Illinois Department of Financial and Professional Regulation from conducting any further disciplinary proceedings relating to Plaintiff's Illinois real estate appraiser's license in violation of her constitutional rights.

                                              Respectfully submitted,
                                              The Richardson Firm

                                  By: S/John J. Richardson
                                        John J. Richardson

John J. Richardson
THE RICHARDSON FIRM
218 N. Jefferson St., Ste. 201
Chicago, Illinois 60661
888.949.5245 (Tel.)
312.590.3295 (Cell)
John.richardson@firmrichardson.com
*Attorneys for the Plaintiff, Elizabeth Engle*