IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH ENGLE, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 402 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| FINANCIAL AND PROFESSIONAL | ) | |
| REGULATION and MARIO J. TRETO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth Engle filed this action under 42 U.S.C. § 1983, alleging that Defendants, Illinois Department of Financial and Professional Regulation ("IDFPR") and its Acting Director, Mario J. Treto,[1] have inappropriately commenced administrative proceedings to revoke her real estate appraiser license. Contemporaneously with the filing of her complaint, Engle moved for preliminary injunctive relief to stop the administrative process. Defendants, in response, have moved to dismiss the complaint based on the *Younger* abstention doctrine. For the reasons stated herein, Engle's motion for a preliminary injunction or temporary restraining order [2] [3] is denied, and Defendants' motion to dismiss [9] is granted. This case is dismissed without prejudice to the extent that Plaintiff wishes to proceed in state court. Civil case terminated.

---

[1] The Court substitutes Mario J. Treto, Acting Director of the IDFPR, for Jessica Baer, former Director of the IDFPR, pursuant to Fed. R. Civ. P. 25(d).

## **Factual and Procedural Background**[2]

The IDFPR is an Illinois agency that regulates the practice of real estate appraisals pursuant to the Real Estate Appraiser Licensing Act of 2002, 225 Ill. Comp. Stat. 458/1-1 *et seq*. Compl. ¶ 10, ECF No. 1. Engle, an Illinois resident, trained to receive such a license from 2011 to 2014. *See id.* ¶¶ 7, 13–14, 21.

To receive a real estate appraiser license in Illinois, an applicant must pass a licensing exam, complete 2,500 hours of training, and submit a written application, among other things. *Id.* ¶ 10. For the training hours, applicants must complete appraisals under the supervision of an authorized licensed appraiser. *Id.* ¶ 11. Applicants record their training hours on IDFPR forms known as "Experience Logs," which are signed by the supervising appraiser and submitted along with the application materials. *Id.* The Experience Logs are used in conjunction with another IDFPR document known as the "Matrix," which contains recommended training hours for given types of appraisals. *Id.*

The IDFPR's Disciplinary Board reviews applications and decides whether to grant or deny real estate appraiser licenses based on the information contained in the applications and supporting materials. *Id.*

While Engle was completing her training hours in November 2011, one of her supervisors, Hal London, passed away. *Id.* ¶ 13. Engle continued training, and in

---

[2] At the motion-to-dismiss stage, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in favor of Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

2

2013, was ready to submit her licensing application. *Id.* ¶ 14a.[3] She, along with colleague Glenn Brown, who had also trained under London, were not sure how to report their training hours given that London had not signed all the necessary paperwork before his death. *Id.* They also had questions about reporting training hours that exceeded the number of recommended hours listed in the Matrix. *Id.* Accordingly, Brown contacted the IDFPR for guidance in August 2013. *Id.* ¶ 14b.

Brown spoke to Brian Weaver,[4] Acting Director of the IDFPR's Division of Real Estate, and Mary Bates, the Disciplinary Board liaison, about this issue and conveyed this information to Engle. *Id.* Based on Weaver's and Bates's recommendations, Engle transposed London's signature onto her Experience Log and submitted a cover letter to the Disciplinary Board explaining that she had done so. *Id.* ¶ 15. She also recorded her training hours only up to the amounts listed on the Matrix, leaving off any excess hours. *Id.* Engle submitted her application and related materials in October 2013. *Id.*

Despite his conversation with Brown, Weaver, who also serves on the Disciplinary Board, initiated fraud charges against Engle for "submitting a false log" on October 29, 2013. *Id.* ¶ 16. Weaver later issued a Notice of Intent to Deny the

---

[3] The complaint contains two paragraphs labeled 14. Accordingly, the Court refers to the first paragraph as ¶ 14a, and the second as ¶ 14b.

[4] In various places in the complaint, Engle describes Weaver as "Defendant Weaver." *See* Compl. ¶¶ 12, 14b, 41. But the complaint does not list Weaver in either the caption or the description of the parties. *See id.* ¶¶ 7–9. Nor does it appear that summons was issued to Weaver. Accordingly, the Court does not consider Weaver to be a party to this litigation.

3

license to Engle, charging that she had falsified London's signature on her Experience Log. *Id.*

The IDFPR commenced disciplinary proceedings against Engle, and Engle (with the aid of her counsel) reached an agreement with the IDFPR whereby the Disciplinary Board would withdraw the charges and allow Engle to reapply for a license, if she made up the hours she worked under London and submitted an application reflecting the actual number of training hours she had worked. *Id.* ¶¶ 17–18. Engle withdrew her application in May 2014, and the disciplinary proceedings were closed. *Id.* ¶¶ 19–20.

After redoing her training hours, Engle submitted a new application in September 2014. *Id.* ¶ 21. This application included an Experience Log that documented all of her training hours, including those that went above and beyond the recommended amounts listed in the Matrix. *Id.* As a result, the training hours Engle recorded on her second application were higher than those listed on her first application. *Id.* The Disciplinary Board granted Engle a real estate appraiser license on December 8, 2014. *Id.*

Soon thereafter, Weaver raised the discrepancies in the hours reported on Engle's two applications to the IDFPR, and the Disciplinary Board again charged Engle with fraud. *Id.* ¶ 22. In April 2015, Christopher Hage, the IDFPR's Chief of Real Estate Prosecutions, called Engle and told her to return her license immediately or he would "press charges." *Id.* ¶ 23. He then followed up with a letter, informing Engle that she had ten days to return her license, or the IDFPR would begin

4

administrative action to revoke it. *Id.* Engle alleges that this request was in violation of a statement on her IDFPR application, which required "appropriate due process" to be given before she could be forced to give up her license. *Id.* ¶¶ 24, 28.

The Disciplinary Board filed a complaint against Engle on June 29, 2015, alleging that Engle had made 126 false statements in her 2014 application, based on the differences in training hours listed on that application as compared to the 2013 application. *Id.* ¶ 29. The complaint also alleged that Engle failed to explain these discrepancies. *Id.*

Disciplinary proceedings commenced, and an administrative law judge ("ALJ") held Engle in default for failing to timely answer or otherwise plead. *Id.* ¶ 24. The ALJ then referred Engle's case to the full Disciplinary Board, which recommended that her license be revoked. *Id.* The Director of the Real Estate Division accepted the Disciplinary Board's recommendation and revoked Engle's license on March 8, 2016. *Id.* ¶ 25.

Engle subsequently filed a complaint for administrative review in the Circuit Court of Cook County. *Id.* ¶ 26. The Circuit Court granted the IDFPR's motion to dismiss the complaint, but the Illinois Appellate Court reversed and remanded to the IDFPR for further proceedings. *Id.*; *see generally Engle v. Dep't of Fin. & Prof'l Regulation*, 103 N.E.3d 382 (Ill. App. Ct. 2018).

Engle filed this lawsuit in January 2019, alleging that the IDFPR is violating her right to due process. In particular, she states, the IDFPR's charges against her are based on actions she took in compliance with her settlement agreement with the

5

agency following the 2013 disciplinary proceedings. *Id.* ¶¶ 38–39. Furthermore, Engle alleges that the IDFPR is improperly enforcing an unwritten rule that an applicant should not list more than the recommended Matrix hours on his or her Experience Log. *Id.* ¶¶ 27–29.

Along with her complaint, Engle moved for a temporary restraining order and preliminary injunction to stop the renewed proceedings from going forward. *See* Mot. TRO & Prelim. Inj., ECF No. 3. In the motion, she argues that Weaver will be a fact witness at any renewed hearing, given that he participated in the discussions about how to fill out the 2013 application and made statements about the IDFPR's alleged unwritten rule. *See id.* at 15. Accordingly, she argues, Weaver should not be allowed to participate in the disciplinary proceedings as a member of the Disciplinary Board. *Id.* at 15–18.

At an initial hearing, the Court entered and continued Engle's request for a temporary restraining order, based in part on the IDFPR's agreement that it would stay the disciplinary proceedings pending the Court's ruling. *See* Minute Entry of 1/24/19, ECF No. 8. After the Court set a briefing schedule on Engle's motion, Defendants moved to dismiss her complaint under the *Younger* abstention doctrine, *see Younger v. Harris*, 401 U.S. 37 (1971). Accordingly, now before the Court are Engle's motion for a temporary restraining order and preliminary injunction, and Defendants' motion to dismiss.

6

## Analysis

I.  **Applicability of *Younger* Abstention**

Defendants contend that the Court must abstain from hearing Engle's complaint or issuing any injunctive relief pursuant to the *Younger* abstention doctrine. This doctrine "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). The Supreme Court's holding in *Younger* "was based partly on traditional principles of equity, but rested primarily on the even more vital consideration of comity." *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989)).

Although the *Younger* doctrine originated in the context of criminal prosecutions, it "has since been expanded beyond criminal prosecutions to various civil proceedings in state court implicating important state interests." *Id.* at 595 n.5 (quotation omitted); *see SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010) ("The civil brand of *Younger* extends only to a federal suit filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government.") (citations omitted). Such civil proceedings include state administrative proceedings that are judicial in nature. *Id.*; *see Tr. & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 294–95 (7th Cir. 1994).

7

Accordingly, under *Younger*, "federal courts must abstain from enjoining or otherwise interfering in ongoing state court proceedings that are (1) judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise federal claims, as long as (4) no exceptional circumstances exist that would make abstention inappropriate." *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007); *see Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir.1998) (citing *Middlesex Cty. Ethics Comm'n. v. Garden State Bar Assoc.*, 457 U.S. 423, 429 (1982)). Exceptional circumstances include when "(1) the state proceeding is motivated by a desire to harass or is conducted in bad faith, (2) there is an extraordinarily pressing need for immediate equitable relief, or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions." *Stroman Realty, Inc.*, 505 F.3d at 664 (internal quotations and citation omitted). If *Younger* abstention is warranted, either a stay or dismissal of the action may be appropriate based on the circumstances. *See FreeEats.com, Inc.*, 502 F.3d at 600.

Here, as Defendants correctly point out, the IDFPR proceedings meet the necessary criteria for *Younger* abstention. First, Engle does not challenge the notion that the disciplinary proceedings are judicial in character. Nor could she. An administrative proceeding that is "coercive" and involves investigation and enforcement of liability, such as the proceeding here, is generally considered to be judicial in nature. *See Stroman Realty, Inc.*, 505 F.3d at 662. It is well-established in the Seventh Circuit that administrative disciplinary proceedings—including those specifically brought by the IDFPR or its predecessor—are judicial. *See id.* (concluding

8

that IDFPR disciplinary proceedings brought against an unlicensed timeshare broker were judicial in nature); *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) (holding that disciplinary proceedings brought by the Illinois Department of Professional Regulation against a clinical psychologist were "plainly judicial in nature"); *see also Majors*, 149 F.3d at 712 (concluding that disciplinary proceedings brought against a nurse by the Indiana State Board of Nursing were judicial in nature).

Nor does Engle challenge the important state interests involved in Illinois's real estate appraisal licensing program. These interests are apparent from the fact that Illinois has codified an extensive set of statutes regulating real estate appraisals. *See* 225 Ill. Comp. Stat. 458/1-1 *et seq.* Furthermore, as Defendants point out, the Seventh Circuit has recognized Illinois's "legitimate and substantial interest in setting and enforcing the standards for those who deal with property sales involving its citizens." *Stroman Realty, Inc.*, 505 F.3d at 663. Although *Stroman Realty* dealt with a real-estate broker as opposed to an appraiser, the same interests are implicated here.

Furthermore, the state disciplinary proceedings offer an adequate forum for Engle to raise her due-process claims. Engle contends that the IDFPR routinely refuses to hear constitutional claims such as hers, and this may be true. But there is still a state-court administrative review process available, where she can seek review of the agency proceeding, even on due-process grounds. In fact, she has already done so successfully. *See generally Engle*, 103 N.E.3d 382 (reversing and remanding the dismissal of Engle's complaint for administrative review on unrelated due-process

9

grounds). Contrary to Engle's assertions, courts widely agree that the availability of state administrative review constitutes an adequate forum under the *Younger* analysis. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 629 (1986) ("[E]ven if Ohio law is such that the Commission may not consider the constitutionality of the statute under which it operates . . . it is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding."); *Stroman Realty, Inc.*, 505 F.3d at 662 ("We see no reason why [a constitutional claim] could not also be adequately addressed on judicial review in the event of an adverse administrative decision."); *Green*, 281 F.3d at 666–67 ("[S]tate-court administrative review of the . . . proceedings constitutes an adequate opportunity for [the plaintiff] to raise his due process and equal protection challenges."). Nor does an administrative-review suit need to be presently underway for this reasoning to apply. *See Ohio Civil Rights Comm'n*, 477 U.S. at 629.

Finally, Engle fails to show that there are any exceptional circumstances that would make abstention inappropriate. First, as Defendants point out, Weaver has agreed that he will not participate in any Disciplinary Board deliberations or have any *ex parte* communications with board members about Engle's case. *See* Defs.' Mem. Supp. Mot. Dismiss, Ex. A, Weaver Decl. ¶¶ 4–5, ECF No. 10-1. Although this would seem to moot Engle's request for a preliminary injunction (which focuses almost exclusively on Weaver's role on the Disciplinary Board), she now argues that even Weaver's presence at the hearing as a witness will taint the proceedings.

10

Because Weaver is a member of the Disciplinary Board, she posits, the other board members will simply take his testimony at face value.

But, although Engle cites a number of cases suggesting that an impartial disciplinary panel may violate her right to due process, she does not explain why that issue could not be adequately addressed in the agency or state-court proceedings. Instead, the Court concludes that Weaver's presence at the hearing does not constitute an extraordinary circumstance for three reasons.

First, the disciplinary hearing will proceed first before an ALJ, not the full Disciplinary Board. Yet Engle does not argue that the ALJ has any relationship with Weaver or is biased in his favor.

Second, Engle only speculates that the Disciplinary Board members have an inappropriate relationship with Weaver that would undermine their impartiality. This speculation is insufficient in light of the presumption that agency officials are unbiased quasi-judicial officers. *See Schweiker v. McClure*, 456 U.S. 188, 195–97 (1982). Because agency proceedings often involve overlap between investigative and judicial functions, it is not automatically apparent that Weaver's testimony would require the recusal of the entire Disciplinary Board. *See Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 716 (7th Cir. 2000) (explaining that the presumption that administrators are impartial can be rebutted only by proof that an adjudicator has "a pecuniary interest in the outcome" or has been "the target of personal abuse or criticism from the party before him"). This is not to say that Engle could *never* prove that individual Disciplinary Board members are biased, but her mere speculation is

11

not enough to show the type of flagrant constitutional violation necessary to avoid the application of *Younger*. *See Stroman Realty, Inc.*, 505 F.3d at 664.

Furthermore, even if the result of the proceedings were to be tainted in some way by Weaver's testimony, Engle can raise that issue in an administrative-review complaint. For instance, in one case Engle cites, the Illinois Appellate Court reversed and remanded the denial of an administrative-review petition, finding that an agency board member had an impermissible conflict of interest and should have recused herself. *Bd. of Educ. of Niles Twp. High Sch. Dist. 219, Cook Cty. v. Reg'l Bd. of Sch. Trs. of Cook Cty.*, 468 N.E.2d 1247, 1249–50 (Ill. App. Ct. 1984). Engle does not explain why the state process is so inadequate that it requires federal-court intervention. Accordingly, Weaver's participation as a witness—particularly where Engle's own allegations establish that he has relevant information to provide about her license applications—does not show that the proceedings are motivated by a desire to harass, require immediate equitable relief, or are based on any flagrant constitutional violation.

Engle next contends that the IDFPR's use of an "unwritten rule" about how to record training hours violates her due-process rights. She argues that the unwritten rule—that recorded hours should not exceeded the recommended hours listed on the Matrix—is both contrary to advice given to her by IDFPR employees and unsupported by the IDFPR's written standards. As a result, Engle contends, this rule violates the due-process requirement that she be given sufficient notice of the standards to which she is being held. *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 478–79

12

(7th Cir. 2012) (explaining that the vagueness doctrine prohibits the enforcement of laws that "fail[ ] to provide a person of ordinary intelligence fair notice of what is prohibited, or [are] so standardless that [they] authorize[ ] or encourage[ ] seriously discriminatory enforcement").

But even if Engle could establish that the so-called unwritten rule violates her due-process rights, she has not shown that it constitutes an extraordinary circumstance for purposes of the *Younger* doctrine. Assuming the IDFPR is enforcing an unwritten rule or inconsistent standards with respect to the recording of training hours, it still does not necessarily follow that the agency is targeting Engle for harassment or that enforcement of the rule is incapable of being cured on appeal or administrative review. As the Supreme Court has noted, even a "constitutional attack on state procedures themselves" does not "automatically vitiate[ ] the adequacy of those procedures for purposes of the *Younger-Huffman* line of cases." *Ohio Civil Rights Comm'n*, 477 U.S. at 628 (internal quotations and citation omitted). The Circuit Court of Cook County has demonstrated its willingness and ability to adjudicate due-process claims on administrative review, *see Engle*, 103 N.E.3d at 391–97, and it is in a better position than the federal courts to interpret the IDFPR's standards. Accordingly, this issue also does not present a flagrant constitutional violation or other extraordinary circumstance.

Because the Court holds that *Younger* abstention is warranted, the next question is whether the Court should stay or dismiss this action. *See FreeEats.com*, 502 F.3d at 600 (citing *Majors*, 149 F.3d at 714). In determining whether to stay or

13

dismiss, the "pivotal question" facing the Court is "whether any of the relief sought by the plaintiff in its federal action is unavailable in the state action." *Id.* Here, Engle seeks only injunctive relief concerning the agency proceedings, which as already described, can be addressed effectively in the state agency or on administrative review in the Circuit Court. As a result, the Court concludes that dismissal is the appropriate course of action.[5]

## II. Preliminary Injunctive Relief

A party seeking a preliminary injunction must show (1) that its case has "some likelihood of success on the merits," and (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chi.,* 651 F.3d 684, 694 (7th Cir. 2011). If the moving party meets these threshold requirements, the district court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* The district court's weighing of the factors is not mathematical in nature; rather, it is "more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895–96 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 12 (7th Cir. 1992)).

---

[5] Because the Court concludes that *Younger* abstention applies, the Court does not reach Defendants' alternative argument that the Eleventh Amendment bars suit against the IDFPR as an arm of the state.

14

In determining that *Younger* abstention applies, the Court necessarily holds that injunctive relief is not available from this Court. Since dismissal is warranted under *Younger*, it would be impossible for Engle to demonstrate a likelihood of success on the merits. *See Ezell*, 651 F.3d at 694. Furthermore, as already described, it is not clear that Engle will suffer irreparable harm absent an injunction, given the availability of comparable state remedies. *See id.* Accordingly, even if there is no adequate damages remedy for Engle, the balance of harms weighs strongly against Engle and in favor of Defendants. *See id.* Engle's motion for a preliminary injunction is therefore denied.

## Conclusion

For the reasons stated herein, the Court denies Engle's motion for a temporary restraining order and preliminary injunction and grants Defendants' motion to dismiss on *Younger* abstention grounds. This action is dismissed without prejudice to refiling in state court. Civil case terminated.

**IT IS SO ORDERED.**          **ENTERED 5/28/19**

                                                    **John Z. Lee**
                                                    **United States District Judge**